**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Sean Twohig, Sandy Balbin, individually and on behalf of all others similarly situated,<br><br>                             Plaintiff,<br>     -against-<br><br>Shop-Rite Supermarkets, Inc.,<br><br>                      Defendant. | Case No. 7:20-cv-00763-CS<br><br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

FOLEY HOAG LLP

August T. Horvath
(*ahorvath@foleyhoag.com*)
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel:  (646) 927-5500
Fax:  (646) 927-5599

*Attorneys for Defendant Shop-Rite*
*Supermarkets, Inc.*

FH5172460.2

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................3

ARGUMENT ......................................................................................................................5

I.      PLAINTIFFS MAY NOT ENFORCE FOOD REGULATIONS.......................................5

      **A.**    Plaintiffs' Attempt to Enforce the FDCA Is Preempted ...........................................5

      **B.**    No New York Food Law Covers the Subject Matter of this Lawsuit......................7

      **C.**    The Product Complies with All Regulations, and Plaintiffs' Attempt to Impose Additional Requirements Is Preempted ....................................................10

II.     PLAINTIFFS DO NOT PLAUSIBLY ALLEGE CONSUMER DECEPTION ..............13

      **A.**    Implausible False-Advertising Suits Are Dismissed as a Matter of Law .............13

      **B.**    The Use of "Vanilla" Is Not Misleading to a Reasonable Consumer....................14

      **C.**    Plaintiffs Have No Basis for Their Assumptions about the Product's Ingredients............................................................................................................17

III.    PLAINTIFFS' ANCILLARY CAUSES OF ACTION ARE IMPROPERLY PLED AND/OR INAPPROPRIATE ...........................................................................................20

IV.    PLAINTIFFS HAVE NO STANDING TO SEEK INJUNCTIVE RELIEF....................24

CONCLUSION.................................................................................................................25

FH5172460.2

## **TABLE OF AUTHORITIES**

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09-cv-395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................................................. 24

*Alice v. Wise Foods, Inc.,*
  No. 17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009 (S.D.N.Y. Mar. 27, 2018).............. 25

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*,
  115 A.D.3d 128 (App. Div. 2014) ....................................................................................... 22

*Becerra v. Dr. Pepper/Seven Up, Inc.,*
  945 F.3d 1225 (9th Cir. 2019) ............................................................................................ 15

*Berni v. Barilla S.p.A., et al. v. Schulman*,
  No. 19-1921-cv, 2020 U.S. App. LEXIS 21167 (2d Cir. July 8, 2020) ............................ 24, 25

*Borchenko v. L'Oreal USA, Inc.,*
  389 F.Supp.3d 769 (C.D. Cal. 2019) ...................................................................................... 6

*Bowring v. Sapporo U.S.A., Inc.*,
  234 F. Supp. 3d 386 (E.D.N.Y. 2017) ............................................................................... 23, 24

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016).................................................................................... 24

*Campbell v. Freshbev LLC*,
  322 F. Supp. 3d 330 (E.D.N.Y. 2018) ................................................................................... 14

*Campbell-Clark v. Blue Diamond Growers*,
  No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019)................................................................ 13

*Casey v. Odwalla, Inc.,*
  338 F. Supp. 3d 284 (S.D.N.Y. 2018) ..................................................................................... 2

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) .................................................................................................. 23

*Cohen v. S.A.C. Trading Corp.*,
  711 F.3d 353 (2d Cir. 2013) .................................................................................................. 23

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. 14-2484, 2015 U.S. Dist. LEXIS 63464 (E.D.N.Y. May 14, 2015) ................................ 25

ii

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ........................................................................... 10, 13

*Hammer v. Am. Kennel Club*,
   1 N.Y.3d 294, 300 (N.Y. Dec. 23, 2003) ................................................................. 9

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) .................................................................... 25

*In re Amla Litigation.*,
   282 F. Supp. 3d 751 (S.D.N.Y. 2017) .................................................................... 24

*In re Frito-Lay*,
   No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824
   (E.D.N.Y. Aug. 29, 2013) ............................................................................... 21, 23

*In re Trader Joe's Tuna Litig.*,
   289 F. Supp. 3d 1074 (S.D. Cal. 2017) ................................................................... 7

*International Prods. Co. v. Erie R. R. Co.*,
   244 N.Y. 331 (1927) ......................................................................................... 22

*J.A.O. Acquisition Corp. v. Stavitsky*,
   8 N.Y.3d 144 (2007) ......................................................................................... 22

*Jessani v. Monini N. Am., Inc.*,
   744 F. App'x 18, 19 (2d Cir. 2018) ...................................................................... 13

*Johnson & Johnson-Merck Consumer Pharms. Co.*,
   19 F.3d 125 (3d Cir. 1994) ................................................................................ 17

*Kimmell v. Schaefer*,
   89 N.Y.2d 257 (1996) ........................................................................................ 22

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ............................................................................... 23

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ....................................................................................... 22

*McBeth v. Porges*,
   171 F. Supp. 3d 216 (S.D.N.Y. 2016) ................................................................... 23

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*,
   962 F. Supp. 2d 514 (S.D.N.Y. 2013) ................................................................ 9, 10

iii

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*,
   894 F.3d 95 (2d Cir. 2018) ..................................................................... 9

*Orlander v. Staples, Inc.*,
   802 F.3d 289, 300 (2d Cir. 2015) ..................................................... 10, 13

*Patane v. Nestle Waters North America, Inc.*,
   314 F. Supp. 3d 375 (D. Conn. 2018).................................................. 6, 8

*Patane v. Nestle Waters of North America, Inc.*,
   369 F. Supp. 3d 382 (D. Conn. 2019) ...................................................... 8

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997) .................................................................. 6

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*,
   292 F. Supp. 2d 594 (D.N.J. 2003) ........................................................ 16

*Planned Parenthood of N.Y.C., Inc. v. United States HHS*,
   337 F. Supp. 3d 308 (S.D.N.Y. 2018) ...................................................... 9

*Price v. L'Oreal USA, Inc.*,
   No. 17-civ-0614, 2017 U.S. Dist. LEXIS 165931 (S.D.N.Y. Oct. 5, 2017) ............................. 24

*Procter & Gamble Pharm., Inc. v. Hoffman-LaRoche, Inc.*,
   No. 06-cv-0034, 2006 U.S. Dist. LEXIS 64363 (S.D.N.Y. Sept. 6, 2006) ........................ 16, 17

*Procter & Gamble Co. v. Ultreo, Inc.*,
   574 F. Supp. 2d 339 (S.D.N.Y. 2008).............................................. 16, 17

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
   No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019)..................... 13, 14

*Sarr v. BEF Foods, Inc.*,
   No. 18-cv-6409 (ARR), 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) ........... 13, 23

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC*,
   60 F. Supp. 3d 331 (E.D.N.Y. 2014) ..................................................... 23

*Sibrian v. Cento Fine Foods, Inc.*,
   No. 19-cv-0974-JS-ST, 2020 U.S. Dist. LEXIS 117300 (E.D.N.Y. July 2, 2020) ................ 14

*Solak v. Hain Celestial Grp., Inc.*,
   No. 3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270
   (N.D.N.Y. April 17, 2018)...................................................................... 14

iv

*Steele v. Wegmans,*
   No. 1:19-cv-09227 (LLS), 2020 U.S. Dist. LEXIS 123637
   (S.D.N.Y. July 14, 2020) ................................................................................ *passim*

*Tomasino v. Estee Lauder Cos., Inc.,*
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ................................................................ 25

*Verzani v. Costco Wholesale Corp.,*
   No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010) ...................... 6, 7

*Weisblum v. Prophase Labs, Inc.,*
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................ 3

## Statutes & Regulations

1 NYCRR § 204 ........................................................................................ 10

1 NYCRR § 250.1 ..................................................................................... 9, 10

21 C.F.R. § 101.4 ................................................................................... 12

21 C.F.R. § 101.22 .................................................................................. 2, 12

21 C.F.R. § 169 ...................................................................................... 12

21 U.S.C. § 337(a) .................................................................................. 6, 8

21 U.S.C. § 343 ..................................................................................... 8, 11, 18

New York General Business Law §§ 349-350 ........................................................ *passim*

U.C.C. §2-314 ....................................................................................... 21

## Secondary Sources

*S.S. Diamond, Control Foundations:Rationales and Approaches*, S.S. Diamond & J.B.
   Swann (eds.), Trademark and Deceptive Advertising Surveys: Law, Science,
   and Design (ABA 2012) .......................................................................... 16

v

## INTRODUCTION

In the First Amended Complaint (Dkt. 15, "FAC"), part of a campaign of over 80 substantially similar lawsuits filed by these counsel against vanilla flavored products, Plaintiffs allege that Shop-Rite Supermarkets, Inc.'s ("Shop-Rite") organic vanilla soymilk, sold under the brand Wholesome Pantry™ by the name of "Organic Soymilk Vanilla" (the "Product"), communicates to consumers an extensive series of implied messages about an exclusive source of the vanilla flavoring in the soymilk.  Common sense and common knowledge dictate the opposite.  Consumers understand that "vanilla" is a flavor designator of the soymilk, not an ingredient claim.  A reasonable consumer would not perceive the misleading messages alleged by Plaintiffs to be communicated about the product, and the remedies suggested by Plaintiffs would make no difference in a reasonable consumer's interpretation of the packaging.

 Despite extensive allegations, many of them historical, gratuitous, and unrelated to the facts and substantive allegations of the lawsuit, Plaintiffs have failed to plead any plausible basis as to why a reasonable consumer would care what the source of the vanilla taste is, and even if he did, why he would expect all the vanilla flavor to come *solely* from vanilla beans.  Consumers do not desire vanilla bean extract for its nutritive properties, for it is not a nutrient – it is strictly a flavoring, as Plaintiffs cannot dispute.

Even if Plaintiffs could establish that the Product's labeling communicates what they claim it does, Plaintiffs have failed to allege plausibly that the contents of the Product differ from what is allegedly represented.  Plaintiffs have no basis for anything that they allege about the contents of the Product other than the occurrence of one term – "organic natural flavor" – in its ingredient statement, to which Plaintiffs attach unwarranted interpretations and exaggerated

1

significance, and a mass spectroscopy analysis and consumer survey that are self-evidently worthless.

Plaintiffs' substantive allegations are concerned almost entirely with accusations that Shop-Rite violated the Food, Drug & Cosmetic Act (FDCA), as interpreted by Plaintiffs. However, Plaintiffs' own referenced sections identify vanilla extract as a "natural flavor" and state that manufacturers "shall declare the flavor in the statement of ingredients in the following way: …"natural flavor…may be declared as 'natural flavor.'" 21 C.F.R. § 101.22(h)(1). Plaintiffs' attempt to impose different label requirements on Shop-Rite contradicts preemption provisions for food labeling. *See Casey v. Odwalla, Inc.,* 338 F. Supp. 3d 284, 296 (S.D.N.Y. 2018) ("[I]f a product's packaging does not run afoul of federal law governing food labeling, no state law claim for consumer deception will lie.").

Plaintiffs' entire basis for asserting consumer deception is that a violation of the FDCA is, *per se*, a deceptive practice under state consumer protection laws such as New York's GBL §§ 349-350. But Plaintiffs incorrectly interpret the FDCA, mischaracterize and misconstrue the regulations under the statute, and rely on unreliable third-party sources and own non-expert intuition for their interpretations. In fact, Shop-Rite's practices comply with the FDCA. Second, and moreover, the parties should not be litigating whether Shop-Rite violated the FDCA before this Court in the guise of New York GBL §§ 349-350 claims. Not only are alleged violations of the FDCA not *per se* deceptive practices under GBL §§ 349-350, but Plaintiffs are expressly preempted from attempting to enforce the FDCA privately by positing state-law duties that are tantamount to FDCA compliance, and alleged regulatory violations that are not even relevant to whether actual consumer deception has been plausibly pled.

## FACTUAL BACKGROUND

Defendant Shop-Rite Supermarkets, Inc. ("Shop-Rite") sells soymilk under the

Wholesome Pantry™ brand, including the product at issue in this case, Organic Soymilk Vanilla

(the "Product").  Besides Vanilla, Wholesome Pantry Organic Soymilk is also available in an

Original (i.e., unflavored) variety.  In the soymilk category, a light touch of vanilla flavoring is

sometimes offered as a way of moderating the astringent taste of pure soymilk.   The Product is

not marketed, expected, or understood by consumers to be a strongly vanilla flavored beverage.

The flavoring of food products has seen technical advances and increased sophistication

over the decades.  Foods are increasingly flavored not just with a few simple ingredients, but

with carefully formulated packages of extracts and other flavors.  These packages deliver a more

complex and interesting taste profile, ensure flavor consistency, and enable differentiation in

product lines.

In soymilks that incorporate one of these packages – commonly termed a with-other-

natural-flavors, or "WONF" package – the flavor supplier, without disclosing its exact

ingredients, generally certifies that the flavoring meets any requirements set by the soymilk

manufacturer, such as being all-natural, organic, and so forth, as well as providing guidance on

the declaration of the flavoring in the ingredient statement.  The soymilk manufacturer creates

labeling for the soymilk that meets the requirements of the Food, Drug & Cosmetic Act and also

is truthful and transparent to consumers.

None of this sophisticated process of developing a great tasting soymilk fits into

Plaintiffs' simplistic, cynical worldview.  Plaintiffs allege that the designation of a product as

"vanilla" soymilk, regardless of the nature or context of the representation, implies, to

consumers, *all* of the following: (1) vanilla is the "characterizing flavor" (FAC ¶ 4); (2) vanilla is

3

contained in a sufficient amount to flavor the product (FAC ¶ 4); (3) the flavor is derived from vanilla extract or vanilla flavoring (FAC ¶ 70); (4) no other flavors simulate, resemble, reinforce, extend or enhance flavoring from vanilla or permit less real vanilla to be used (FAC ¶ 38); and (5) vanilla is the exclusive source of flavor.  (FAC ¶ 34).  It is implausible that reasonable consumers perceive any, let alone all, of these meanings from the mere designation of a product as "vanilla" soymilk.  Some of the implied meanings contradict each other:  vanilla flavoring, as Plaintiffs admit, may come from sources other than vanilla beans, so the third alleged meaning is inconsistent with the fifth.  "Characterizing flavor" is an FDA term of art, unknown and meaningless to most consumers.  The second and fourth implied meanings are too vague ever to be proven or disproven – who is to be the judge of whether there is a "sufficient amount [of vanilla] to flavor the product"?  There is no accepted standard for such an amount.  Beyond these conclusory pleadings, Plaintiffs allege not the slightest factual basis to contend that consumers read "vanilla soymilk" to mean anything other than that the soymilk has a vanilla taste.

Plaintiffs allege that these implied statements are deceptive because, allegedly, there are other flavorings in the products besides vanilla extract; there are simulated vanilla flavorings in the products; and/or there is an insufficient amount of vanilla extract to impart vanilla flavor. FAC ¶¶ 4, 38-40, 53, 70.  The main basis for these allegations is that the ingredient list on the side or back label of the Product includes the item "organic natural flavors."  FAC ¶¶ 37-38. Plaintiffs also cite and attach the results of a gas chromatography/mass spectrometry analysis, for which the methodology is unknown, and interpretation is entirely their attorneys', with no support from the researcher who conducted the analysis or any other expert.  FAC ¶¶ 40-46. This analysis is facially invalid and provides no support for the allegations.  Recently, another court in this District held, in a similar case brought by the same counsel regarding vanilla ice

4

cream, that the "vanilla" flavor designator merely tells the consumer whether the ice cream tastes like vanilla, rather than chocolate, lemon, etc. and that a gas chromatography could not support Plaintiffs' theory because it may merely show that the test is too insensitive to detect vanilla extract in ice cream[1].  *Steele v. Wegmans Food Markets, Inc.,* No. 1:19-cv-09227 (LLS), 2020 U.S. Dist. LEXIS 123637, at *5-6 (S.D.N.Y. July 14, 2020).  As discussed below, this case confirmed prior precedent in this Circuit that the flavor designator communicates nothing about the source of the vanilla flavor and that a reasonable consumer would not be led by such a designation into *any* inference about the source of the flavor, let alone the very specific, regulatory-jargon-based inferences postulated by Plaintiffs.

## ARGUMENT

### I.    PLAINTIFFS MAY NOT ENFORCE FOOD REGULATIONS

#### A.    Plaintiffs' Attempt to Enforce the FDCA Is Preempted

Plaintiffs' Complaint is largely an epistle on FDA regulations.  It contains no less than 25 citations to chapter 21 of the Code of Federal Regulations implementing the FDCA.  Much of the Complaint is spent arguing the intricacies of FDA regulations as they apply to various soymilk, and speculating an industry-wide conspiracy to deprive consumers of vanilla extract.  The only factual bases for Plaintiffs' allegations that Shop-Rite's vanilla soymilk label deceive consumers are conclusory allegations that any products not conforming to FDA regulations, as interpreted by Plaintiffs, are deceptive.  FAC ¶¶ 19, 31.

---

[1] The Court in *Steele* came to this conclusion after reviewing the methodology for the gas chromatography analysis included with the complaint in that case.  Here, a methodology is not even included, making the analysis in this case unreliable and irrelevant.

This focus on food and drug regulations as the sole basis for Plaintiffs' allegations of consumer deception reveals the Complaint as Plaintiffs' attempt to privately enforce the FDCA, filed because Plaintiffs' counsel believes it has spotted a technical violation of FDA regulations. But Plaintiffs are neither competent to interpret FDA regulations nor empowered to enforce them. The right to enforce the FDCA rests exclusively with the FDA. *See* 21 U.S.C. § 337(a); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (there can be no private cause of action if a plaintiff's "true goal is to privately enforce alleged violations of the FDCA"); *Verzani v. Costco Wholesale Corp*., No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699, at *8 (S.D.N.Y. Sept. 28, 2010) ("The FDCA lacks a private right of action and therefore [a plaintiff] cannot rely on it for purposes of asserting a state-law consumer claim under G.B.L. § 349"), *aff'd*, 432 Fed. Appx. 29 (2d Cir. 2011).

Not only can Plaintiffs not explicitly seek to enforce the FDCA directly, they also cannot do so under New York law, under the guise of a state-law cause of action. Such claims are impliedly preempted by the federal statute. "Where a state law claim would not exist but for a FDCA regulation, [21 U.S.C.] § 337(a) impliedly preempts the claim." *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018) (dismissing state-law deceptive practices claims where "[e]ach and every one of plaintiffs' claims are wholly FDCA-dependent"); *see also Borchenko v. L'Oreal USA, Inc.,* 389 F.Supp.3d 769, 774 (C.D. Cal. 2019) (holding that plaintiff's Sherman Law claim is preempted because it "exists solely by virtue of the FDCA and [state] law which references the FDCA."). There could be no clearer example of a lawsuit that seeks to enforce the Food, Drug & Cosmetic Act, thinly veiled as a state consumer protection law claim, than this case. Every aspect of Plaintiffs' claims relies on one of the many FDA regulations cited throughout the Complaint, with no allegations of any privately

6

enforceable independent state-law duty and no legitimate independent supporting factual contentions.  This is truly a case that "would not exist but for a FDCA regulation."  *Id.*

### B.   No New York Food Law Covers the Subject Matter of this Lawsuit

Plaintiffs attempt to find an alternative New York duty to avoid preemption, but to no avail.  New York has not enacted a comprehensive food law.  New York has enacted only limited laws regulating foods of special interest to this jurisdiction.  Most of those provisions are found in the Agriculture & Markets Law, which, as its title suggests, focuses more narrowly on promulgating standards for specific foods and food-related practices.  Courts have examined the scope of New York's food law and regulation in cases like this one, where plaintiffs attempted to circumvent FDCA preemption by asserting state law causes of action supposedly in parallel with the FDCA.  The courts that have given serious consideration to the matter, often adjudicating multi-state purported class actions, have concluded that New York does not have a comprehensive food regulatory scheme.

"[I]n New York and many other states, courts have concluded that where a state has not adopted statutes that expressly mirror the FDCA, … a plaintiff's claim that relies on the defendant's failure to comply with federal regulations is impliedly preempted," held the court in *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1086 (S.D. Cal. 2017), dismissing with prejudice a plaintiff's New York G.B.L. §§ 349-350 claims that relied on the FDA regulatory standard for declaring the weight of cans of tuna.  "Where, like here, a plaintiff's true purpose is to enforce federal regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory scheme is not sufficient to escape preemption."  *Id.*, *citing Verzani*, 2010 U.S. Dist. LEXIS, at *3 ("[Plaintiff's] persistent allegations that Costco's labeling of the Shrimp Tray violates the FDCA['s] ... regulations on the labeling of 'shrimp cocktails' indicates that his true

purpose is to privately enforce alleged violations of the FDCA, rather than to bring a [state-law] claim for unfair and deceptive business practices.").

In *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375 (D. Conn. 2018) ("*Patane I*"), as here, Plaintiffs challenged a food's statement of identity – "spring water" in that case – and contended that it was deceptive because, allegedly, it did not conform to the FDCA's requirements, lodging its claims under the laws of several states, including New York. *Id.* at 378. The court initially dismissed the case as to all states, noting that one preemption provision in the FDCA prevents anyone except the U.S. government from enforcing its provisions (*id.* at 385, citing 21 U.S.C. § 337(a)), while another preempts any state from imposing standards of identity that are "not identical" to those of the FDCA (*id.* at 384-85, citing 21 U.S.C. § 343-1(a)(1)). The plaintiffs in *Patane I* amended their complaint, and ultimately were allowed to proceed in New York, among other states, because New York has a limited law defining "spring water" as part of its Sanitary Code, and does so consistently with the FDCA. *Patane v. Nestle Waters of North America, Inc.*, 369 F. Supp. 3d 382, 392-93 (D. Conn. 2019) ("*Patane II*"), citing 10 N.Y.C.R.R. § 5-6.3. As to that product, plaintiff's amendments met the requirement of pleading an independent state-law duty that could serve as the basis for their claims. *Patane II*, 369 F. Supp. 3d at 388.

Here, Plaintiffs have pled incorrectly that provisions of New York's Agriculture & Markets Law incorporate by reference the entirety of federal food regulation. FAC ¶¶ 15, 19 n.10. In fact, where the New York legislature has chosen to regulate a food, it has spelled out its standards of identity and other restrictions in the provisions of the AML. The labeling of vanilla and other flavorings are *not* areas that New York has chosen to regulate.

8

Nor does the AML incorporate the FDCA by reference as Plaintiffs contend.  Some of the regulations under the AML are superficially phrased broadly, but these regulations are explicitly adopted only "[f]or the purpose of the enforcement of article 17 of the Agriculture and Markets Law."  1 NYCRR § 250.1.  They are limited to the substantive coverage of the AML's statutory provisions, as they must be, under the well-established administrative law principle that an agency cannot expand the scope of a statute through regulation beyond that established by the legislature in passing the enabling statute.  *See Planned Parenthood of N.Y.C., Inc. v. United States HHS,* 337 F. Supp. 3d 308, 314 (S.D.N.Y. 2018) ("'It is well settled that an agency may only act within the authority granted to it by statute.' *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108 (2d Cir. 2018).").

Finally, there is no private right of action under the AML, and Plaintiffs have not pled such a claim.  *See Hammer v. Am. Kennel Club*, 1 N.Y.3d 294, 300 (N.Y. Dec. 23, 2003) ("The statute does not, either expressly or impliedly, incorporate a method for private citizens to obtain civil relief.  In light of the comprehensive statutory enforcement scheme, recognition of a private civil right of action is incompatible with the mechanisms chosen by the Legislature."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (no private right of action exists under the AML's food regulations, such as its explicit standards for olive oil products); *Steele*, 2020 U.S. Dist. LEXIS 123637 at *3 (holding, in dismissing a case regarding vanilla flavoring of ice cream, that "[n]o private civil actions [under the food regulation provisions of the AML] can be inferred; the legislature created such a right of action only when it wished to").

Nor can Plaintiffs transmute an alleged regulatory violation into a G.B.L. §§ 349-350 claim.  In *North American Olive Oil Association v. Kangadis Food Inc.,* a plaintiff alleged that a

defendant violated the regulatory standard of identity for olive oil, which (unlike vanilla flavoring) is explicitly regulated by New York's AML at § 204-a, in an standard identical to that of the FDCA.  962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013).  Even though Judge Rakoff, presiding over that case, agreed with the plaintiff that the defendant's olive oil failed to comply with both the AML and the FDCA, this was of no avail to the plaintiff's G.B.L. §§ 349 -350 claims.  He found that the plaintiff failed to allege consumer deception with plausibility, and denied a preliminary injunction as to that claim.  Similarly, in dismissing a similar vanilla case by the same Plaintiffs' counsel, Judge Stanton held that the plaintiff's "extensive discussion and argument in the motion papers with respect to particular federal standards for ice cream regulations is without consequence."  *Steele*, 2020 U.S. Dist. LEXIS 123637 at *3.

As acknowledged by Judge Rakoff and Judge Stanton, not only are violations of both the AML and FDCA not a direct source of a G.B.L. §§ 349-350 violation, they are not even informative of whether there is such a violation.  There is only one standard of deception under the G.B.L., and that is whether a reasonable consumer acting reasonably under the circumstances would perceive and believe a message that is false or misleading, as articulated in *Orlander v. Staples, Inc.,* 802 F.3d 289 (2d Cir. 2015) and *Fink v. Time Warner Cable,* 714 F.3d 739 (2d Cir. 2013).  Plaintiffs attempt to rely on a consumer survey in support of their position regarding the reasonable consumer standard, but as further discussed below, Plaintiffs' survey is not to be given any weight.

### C.     The Product Complies with All Regulations, and Plaintiffs' Attempt to Impose Additional Requirements Is Preempted

An analysis of Plaintiffs' theory shows why it is good policy that such plaintiffs are not permitted to privately enforce food regulations.  Plaintiffs have built a theory of FDCA violation by plucking provisions and regulations from different parts of the Act, while ignoring other

10

provisions that inconveniently invalidate their claims.  The result is that almost everything Plaintiffs allege about food regulations is legally incorrect, and the Product complies fully with those regulations even if what Plaintiffs guess about its actual contents were true.

Plaintiffs attack two areas of the Product's packaging, both closely governed by extensive federal regulations.  The first and main attack is against the official product name, "Organic Soymilk Vanilla," as shown on the primary display panel.  Plaintiffs contend that "Vanilla" in the Product name must be the common name of the ingredient that provides the vanilla flavor in the soymilk, as provided in the Act's specific vanilla flavoring regulations, as if the soymilk were being marketed as a vanilla extract.  Therefore, Plaintiffs assert, if the ingredient(s) providing the vanilla flavor is anything other than vanilla extract, this word may not be merely "Vanilla," or else the product is misbranded.  This is wrong.

In the Product's name, under the regulations, the portion of the name subject to an FDA standard of identity is "Soymilk," whose accuracy is undisputed.  "Vanilla," a flavoring, is an optional word in the Product name.  Under 21 U.S.C. § 343(g), a food for which there is a standard of identity must bear on its label "the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (*other than spices, flavoring, and coloring*) present in such food" (emphasis added). The FDCA thus specifically exempts the name of a flavoring, when included in the name of a food, from having to comply with the standard of identity or common-name rules that would apply if it were an ordinary ingredient.  The vanilla standards of identity are inapplicable to this Product.  Plaintiffs' allegation that "[w]hen the characterizing flavor is vanilla, the vanilla regulations take precedence over the general flavor regulations" (Dkt. 15 ¶ 17) is unsupported by any authority and is false.

11

The food regulations recognize what Plaintiffs refuse to acknowledge: flavor designators are not ingredient claims and are treated differently because their purpose is to communicate what the product will taste like. Under the regulations, the Product is properly labeled.

Plaintiffs' second attack is on the Product's ingredient statement, where they allege that because "organic natural flavors" is listed higher on the ingredient statement than "organic vanilla extract," that vanillin from non-vanilla sources is used to primarily provide the vanilla flavor to the product. Dkt. 15 ¶¶ 38-39. This, too, is wrong. Plaintiffs have no basis to allege that "organic natural flavors" includes artificial vanilla flavors. And even if it did, under 21 C.F.R. § 101.22(h)(1), any "[s]pice, natural flavor, and artificial flavor may be declared as 'spice,' 'natural flavor,' or 'artificial flavor'" in the ingredient statement. Vanilla extract is used in the Product as a flavor, and may be disclosed as "natural flavor" in the ingredient statement, whether it is used alone or combined with other natural flavors. The standards of identity Plaintiffs reference at 21 C.F.R. § 169.175-182 (Dkt. 15 ¶ 19) are inapplicable. They may apply to a product such as the vanilla extract available on grocery store spice racks, but, because of 21 C.F.R. § 101.22(h)(1), not to the listing of vanilla as a flavoring in another food, such as soymilk. Furthermore, while there is no standard of identity for soymilk, the analogous one for milk provides that "each of the ingredients used shall be declared on the label as required by the applicable sections of parts 101 and 130 of this chapter." 21 C.F.R. § 101.4(b). This makes it clear that the vanilla standards Plaintiffs cite do not take precedence over the general flavor regulations in section 101.22 discussed above. The Product's ingredient statement, which lists "organic natural flavor" and "organic vanilla extract," is fully compliant with regulations and is consistent with a product flavored by vanilla extract alone or in combination with other natural flavors.

## II.        PLAINTIFFS DO NOT PLAUSIBLY ALLEGE CONSUMER DECEPTION

### A.        Implausible False-Advertising Suits Are Dismissed as a Matter of Law

To prove conduct is materially misleading as required under New York General Business Law §§ 349 and 350, a plaintiff must demonstrate that "a reasonable consumer acting reasonably under the circumstances" would be misled.  *Orlander*, 802 F.3d at 300.  A court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer.  *See Fink*, 714 F.3d at 741.  "To state a claim, 'plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.''"  *Sarr v. BEF Foods, Inc.,* No. 18-cv-6409, 2020 U.S. Dist. LEXIS 25594, at *11 (E.D.N.Y. Feb. 13, 2020) (quoting *Jessani v. Monini N. Am., Inc.,* 744 F. App'x 18, 19 (2d Cir. 2018)).

Although dismissal of false-advertising cases on this ground was once rare, a recent rash of meritless lawsuits has created a growing body of Rule 12 case law in this Circuit dismissing challenges to advertising claims because they would not deceive a reasonable consumer.  *See, e.g., Steele,* 2020 U.S. Dist. LEXIS 123637 (dismissing case substantially identical to this one, alleging misleading "vanilla" flavor designator on ice cream); *Sibrian v. Cento Fine Foods, Inc.*, No. 19-cv-0974-JS-ST, 2020 U.S. Dist. LEXIS 117300 (E.D.N.Y. July 2, 2020) (dismissing a case alleging that "San Marzano" tomatoes did not comply with Italian designation-of-origin certifications because a reasonable consumer would not know the details of such certifications); *Sarr*, U.S. Dist. LEXIS 25594 (dismissing case against a food label because it would not communicate a misleading message to a reasonable consumer); *Campbell-Clark v. Blue Diamond Growers*, No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019) (dismissing allegations that packaging for "nut and rice" crackers implicitly overstated their nut content); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-

13

16 (E.D.N.Y. July 26, 2019) (dismissing implausible allegations that "made with real butter" on

mashed potato product implied absence of margarine); *Solak v. Hain Celestial Grp., Inc.*, No.

3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270, at *8-36 (N.D.N.Y. April 17, 2018)

(name of "veggie straws" snacks and images of vegetables are truthful in that they imply the

snacks are made from vegetables, and do not reasonably imply that the snacks contain fresh,

whole, ripe vegetables); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018)

(truthful claim that a juice is "cold-pressed" does not imply that it is only cold-pressed, and not

also processed in any other way).

### B.     The Use of "Vanilla" Is Not Misleading to a Reasonable Consumer

The fundamental claim of the First Amended Complaint is that calling the Product

"vanilla" soymilk implies not just a flavor or taste claim, but an ingredient claim.  Plaintiffs

allege that "vanilla" communicates not just any ingredient claim, such as that the soymilk

contains vanilla extract, nor even that it is predominantly flavored with vanilla extract, but that it

must be <u>exclusively</u> flavored with vanilla extract.  Contrary to the attempts Plaintiffs make in

trying to sustain this theory, reasonable consumers would not take the words "vanilla" to mean

that only vanilla beans were used to flavor the product.  Nor would a consumer be misled to

think that the word "vanilla" means that the Product contains a certain amount of vanilla.

Instead, the phrase "vanilla" serves to distinguish the Product from other types of soymilk, such

as unflavored or chocolate, and helps consumers in choosing which flavor they want to purchase.

Recently, in *Steele v. Wegmans*, another court in this District held that the analysis must

focus on whether the ice cream flavor designator "vanilla" is plausibly deceptive to the

reasonable consumer, and found that it is not, because the "vanilla" flavor designator merely tells

the consumer whether the ice cream tastes like vanilla, rather than chocolate, lemon, etc.  2020

14

U.S. Dist. LEXIS 123637 at *4-5.  The product in question is ice cream, and "of course [the consumer] is not looking for a bowl of vanilla."  *Id.* at *4.  The flavor designator communicates nothing about the source of the vanilla flavor.  *Id.* at *5.

Plaintiffs introduce the results of a survey commissioned by Plaintiffs' counsel as support for their allegations regarding consumer expectation.  The Ninth Circuit recently upheld dismissal of a case at the pleading stage despite the inclusion of a consumer survey, holding that the survey could not salvage the claim by "shift[ing] the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or mak[ing] plausible the allegation that reasonable consumers are misled by the term 'diet'."  *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019).  Similarly, reasonable consumers understand what the word "vanilla" means – that the soymilk has a vanilla flavor – and Plaintiffs' survey does not salvage the allegations in this case.

As the court in *Becerra* held, a summary of purported survey results such as plaintiffs presented in the *Becerra* case and in this one, contribute nothing to the plausibility of a deception claim because Plaintiffs do not provide sufficient information regarding the methodology and selection of survey participants for the Court to determine the meaning and usefulness of the survey.  *Id.* at 1230-31.  Nevertheless, in this instance, enough information is provided that it is obvious that Plaintiffs' survey is facially invalid and is not to be given any weight.  At least two fatal flaws in the methodology are apparent just from the sketchy information provided.

First, the survey does not include a control group testing respondents' perceptions of what Plaintiffs would consider to be a properly labeled version of the Product.  This control group is necessary to isolate the impact of the allegedly misleading elements of the labeling from consumers preconceived beliefs, non-challenged labeling elements, and research artifacts such as

15

leading questions.  *See Procter & Gamble Pharm., Inc. v. Hoffman-LaRoche, Inc.*, 2006 U.S.

Dist. LEXIS 64363 at *25 (S.D.N.Y. 2006); *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp.

2d 339, 351-52 (S.D.N.Y. 2008) ("without a control, one cannot rely on the results of the study

for any purpose"); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F.

Supp. 2d 594, 601 (D.N.J. 2003) ("Controls are an essential feature of reliable survey evidence

because they enable the surveyor to separate the wheat (the effect of the advertisement, alone, on

the participant) from the chaff (the effect of the participant's prior knowledge and/or prior (mis)

conceptions)."); *see generally S.S. Diamond, Control Foundations:Rationales and Approaches*,

S.S. Diamond & J.B. Swann (eds.), TRADEMARK AND DECEPTIVE ADVERTISING SURVEYS: LAW,

SCIENCE, AND DESIGN (ABA 2012) at 202 (discussing control groups as "crucial elements" of

consumer surveys in trademark and advertising litigation).

Second, the survey asks leading questions preceded by improper filter questions.  A

consumer survey question should not imply the answer the researcher seeks, or even that there is

an answer, as does the question asked by Plaintiffs here – "What does the label pictured above

convey about the origin of the vanilla taste?"  Dkt. 15-2 at 7.  The question should never be

phrased in this way, but more importantly, it must be preceded by a "filter" question asking,

"Does the label pictured above convey anything about the origin of the vanilla taste?"  Plaintiffs

did not ask this question, instead asking whether the label "convey[s] to you that the product has

a vanilla taste," which of course it does.  Dkt. 15-2 at 6.  By not giving consumers any

opportunity to express the true answer – that the Product label does not convey anything about

the origin of its vanilla taste – Plaintiffs' survey communicated to respondents that they are

supposed to perceive a message about the origin of the vanilla taste, inflating the answers in the

response category that they sought.  This, too, is a fatal flaw causing courts to discard consumer

16

surveys in advertising cases.  *Protcor & Gamble v. Ultreo,* 574 F. Supp. at 352 ("A survey is not

credible if it relies on leading questions which are inherently suggestive and invite guessing by

those who did not get any clear message at all."), citing *Johnson & Johnson-Merck Consumer*

*Pharms. Co.*, 19 F.3d 125, 134 (3d Cir. 1994) and *Proctor & Gamble v. Hoffmann-La Roche,*

2006 U.S. Dist. LEXIS 64363, at *86.

For at least these reasons, the Court should disregard the biased and worthless consumer

survey results presented by Plaintiffs' counsel.  Thus, there is no basis to allege that consumers

receive any of Plaintiffs' alleged ingredient claims from the Product's packaging.  The actual

message communicated to consumers by "vanilla" soymilk is that the soymilk tastes like vanilla,

as opposed to chocolate or plain soymilk.

### C.     Plaintiffs Have No Basis for Their Assumptions about the Product's Ingredients

#### a.     Plaintiffs' Assumptions Based on the Product Label Are Invalid

Plaintiffs allege that, far from being flavored entirely or predominantly with vanilla

extract, the Product does not contain an amount of vanilla extract adequate to flavor the soymilk

on its own.  FAC ¶¶ 38-45.  These allegations are central to Plaintiffs' contention that consumers

are deceived by the Product's packaging in any material way.  Plaintiffs' first basis for alleging

that the Product does not contain the represented type and amount of vanilla flavoring (i.e.,

vanilla bean extract in an amount sufficient to impart their vanilla flavor) is that the ingredient

statement and side panel of the product includes the item "natural flavor" before "vanilla

extract."  FAC ¶¶ 38-39.

There are three errors with this assumption that are each individually fatal.  First,

Plaintiffs' claim is self-defeating because it admits that by listing "natural flavor" as well as

"vanilla extract" in the ingredient statement, it is clear that vanilla beans are not the exclusive

17

source of the natural flavor.  FAC ¶ 38.  If true, this would mean that Shop-Rite clearly discloses

this alleged information to consumers, and does not mislead them.  Second, however, this

allegation is false; under a correct interpretation of FDA regulations, as explained above, listing

"natural flavor" in the ingredient statement is equally consistent with a product flavored

exclusively by vanilla bean extract.  21 U.S.C. § 343(i)(2) (spices, flavorings and colors may be

designated in ingredient statements as spices, flavorings and colors, without naming each).

Third, Plaintiffs fail to acknowledge that a product labeled "vanilla" soymilk may also

contain secondary, non-vanilla flavor notes.  They allege that a soymilk product characterized as

vanilla must contain only vanilla flavors, and nothing else.  FAC ¶¶ 38-39.  This has no basis in

law, regulation, modern food formulation techniques, or common sense.  It is as if Plaintiffs

alleged that an apple pie, which often contains additional flavors such as cinnamon and nutmeg

to complement the main flavor of apple, is required to be labeled "apple and cinnamon and

nutmeg pie" because every single flavor present must be disclosed. Vanilla soymilk may include

other, non-characterizing flavor notes such as creaminess, roundness, caramel, toastiness, or

sweetness, provided by other natural flavors, to make up a complex flavor profile.  A legitimate

inference from the ingredient statement is that the vanilla taste is supplied by vanilla extract and

that the other natural flavors in the ingredient statement are either components of the other

flavors in the soymilk, including secondary non-vanilla flavor notes.

### b.   Plaintiffs' Chromatography Analysis Is Worthless

Plaintiffs introduces a gas chromatography analysis as a purported basis for alleging that

there is *de minimis* vanilla extract and that the vanilla flavor in the Product comes predominantly

from non-vanilla extract vanillin, maltol, and piperonal.  Plaintiffs claim that because the

analysis did not detect any of the markers in the quantities they claim are present in vanilla

18

extract, they have a plausible basis for their allegations with respect to the Product's flavoring. FAC ¶¶ 40-49.  Plaintiffs provide no information about the researcher or the methodology behind the chromatography analysis.  It appears that Plaintiffs' counsel is interpreting the results of an unknown analysis.  The chromatography analysis should be completely disregarded by the court as unreliable.

Without the need for an in-depth review of the mass spectrometry's methodology, Plaintiffs' analysis suffers from one clear, fatal flaw that renders it worthless.  The analysis has no "control" condition to show what the results would look like if the same method were applied to a soymilk that contains whatever Plaintiffs would deem an adequate amount of vanilla extract. Without such a control condition, Plaintiffs have no basis to allege that the test could have detected the tiny amounts of various minor vanilla extract constituents that they assert should be there.  There is no basis to believe that Plaintiffs' mass spectrometry analysis is not well within the range of variability of a soymilk whose vanilla flavor derives solely from vanilla extract.

Plaintiffs provided an unattributed chromatograph trace of a purportedly similar analysis conducted on a pure vanilla extract, but this provides absolutely no information about what the test would be expected to show when conducted on a product merely containing such an extract at hundreds of times lower concentration and diluted, and potentially masked, by numerous other chemicals and ingredients.  An appropriate control would be a soymilk flavored exclusively by what Plaintiffs consider to be an adequate amount of vanilla extract.  Without such a control, there is no basis to credit Plaintiffs' allegations that their chromatography was capable of detecting what they claim it is, or that it supports their non-expert interpretations in any way.

A mass spectrometry analysis in a case filed by the same plaintiffs' counsel was recently rejected by another court in this District in *Steele*.  2020 U.S. Dist. LEXIS 123637 at *6-*7.  In

that case, counsel at least provided the methodology behind the analysis and nonetheless, the Court rejected the analysis. The Court noted "[t]he fact that the analysis disclosed only the vanillin may simply show that the test was not sensitive enough to detect the markers with smaller profiles in the bean. The test may just confirm that the vanilla flavor derives solely from vanilla extract…. The test performed under plaintiffs' instructions is as inapplicable to this action as are the federal specifications for ice cream flavorings, which are not enforceable by private plaintiffs." *Id.*

As noted by *Steele,* the researchers who conducted Plaintiffs' mass spectrometry analysis were given the wrong assignment. They were assigned to extract and analyze the flavors from the product at issue – not to test specifically for the presence of the chemical markers of concern to the pllaintiff, i.e., vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid. It appears that the same direction was given to the researchers here who looked for the presence of the same chemical markers. A researcher tasked with determining whether those specific chemicals are present in the Product would take special steps to preserve those chemicals during the extraction and preparation process. The researchers retained by Plaintiffs did not do this. As a result, the researchers' methodology was likely to have failed to preserve these chemicals.

## III. PLAINTIFFS' ANCILLARY CAUSES OF ACTION ARE IMPROPERLY PLED AND/OR INAPPROPRIATE

Plaintiffs allege several common-law causes of action that piggyback on the facts of their main claim lodged under N.Y. G.B.L §§ 349-350. These ancillary claims all fail because Plaintiffs' core theory of deception fails. Even if Plaintiffs' deception theory held water, however, the ancillary claims would have to be dismissed because they are inadequately or improperly pled and/or simply inappropriate to the fact pattern Plaintiffs alleges.

**Breach of Warranty**.  Plaintiffs allege that Shop-Rite "warranted to Plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not." FAC ¶ 136.  These are allegedly implied, not express, representations.  Express warranty claims must be founded on express representations – that is, a literal affirmation of fact or promise about the specific thing Plaintiffs allege to be untrue.  *See In re Frito-Lay North America All Natural Litigation*, 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at *84-85 (E.D.N.Y. Aug. 29, 2013).

Plaintiffs' claim for breach of implied warranty of merchantability must also be dismissed because Plaintiffs did not allege that the Product is not of merchantable quality.  A breach of the implied warranty of merchantability occurs only when a product is "unfit for the ordinary purposes for which such goods are used" (U.C.C. § 2-314(c)) – in this case, unfit to eat.  Plaintiffs did not and cannot plead this.  The only other plausible argument for a breach of implied warranty of merchantability is that the Product does not "conform to the promise or affirmations of fact made on the container or label" (U.C.C. § 2-314(f)), which is just a restatement of the definition of an express warranty, and requires a literal affirmation or promise.  These, again, were not pled; Plaintiffs' case is based entirely on implied, not express, claims.

**Negligent Misrepresentation**.  Plaintiffs' claim for negligent misrepresentation is inappropriate under these circumstances, in which Plaintiffs allege misstatements by an advertiser to a mass audience of consumers engaging in arm's-length transactions.  In New York, there must be a special relationship of confidence and trust to establish potential liability for negligent misrepresentation.  *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) (requiring "special relationship" that places an exceptional duty of care on a speaker, such as where plaintiffs were investors in a limited partnership and defendant was attorney and director of an affiliated

21

company who personally solicited plaintiffs as investors).  The duty to speak with care arises

when "the relationship of the parties, arising out of a contract or otherwise, [is] such that in

morals and good conscience the one has a right to rely upon the other for information."  *Id.* at

263, quoting *International Prods. Co. v. Erie R. R. Co.*, 244 N.Y. 331, 338 (1927).  To establish

a claim for negligent representation the plaintiff must demonstrate "(1) the existence of a special

or privity-like relationship imposing a duty on the defendant to impart correct information to the

plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011); *see also J.A.O. Acquisition*

*Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007); *Basis Yield Alpha Fund (Master) v. Goldman*

*Sachs Grp., Inc.*, 115 A.D.3d 128, 141 (App. Div. 2014) (cause of action dismissed for

complaint's lack of allegation of a relationship of trust and confidence between the parties).

Negligent misrepresentation claims generally are lodged against individuals with a direct, one-

on-one relationship with the plaintiff, especially professionals having special expertise, such as

attorneys, accountants and consultants.  *Kimmell*, 89 N.Y.2d at 263-64.  Applying this theory

where Plaintiffs, and the putative class, are a member of a mass audience of consumers, with no

direct relationship to Shop-Rite, is improper, and the claim should be dismissed.

**Fraud**.  Plaintiffs' claim for fraudulent misrepresentation fails because they have not

pled fraud with the required specificity.  "To state a cause of action for fraudulent

misrepresentation under New York law, a plaintiff must allege 'a representation of material fact,

the falsity of the representation, knowledge by the party making the representation that it was

false when made, justifiable reliance by the plaintiff and resulting injury.'"  *McBeth v. Porges*,

171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273,

291 (2d Cir. 2006).  Claims of fraud "must be pled with particularity" beyond that of a normal

claim. *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y.

2014).  Plaintiffs must plead "details that 'give rise to a strong inference that the defendant[] had

an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Id.*, quoting

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

New York courts have held that in false-advertising cases involving mass-marketed

products, allegations that the defendant was commercially motivated to increase its market share,

to satisfy consumer desires and expectations, and to increase its sales and profits do not give rise

to the necessary strong inference that the defendant had an intent to defraud.  *See Sarr*, 2020 U.S.

Dist. LEXIS 25594 at 26-27, citing *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *25 and

*Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996).  Plaintiffs here do not even do this.

Their only allegation of fraudulent intent just circularly reiterates allegations of a false or

misleading statement:  "Defendant's fraudulent intent is evinced by its failure to accurately

identify the Products on the front label when it knew its statements were neither true nor accurate

and could mislead consumers."  FAC ¶ 183.  No basis for any finding of "strong inference of

intent to defraud" is pled.

**Unjust Enrichment**.  Plaintiffs' claim for unjust enrichment must fail because it is

duplicative of their fraud and false advertising claims. An unjust enrichment claim is not

available where it simply replicates another claim.  *See Weisblum v. Prophase Labs, Inc.*, 88 F.

Supp. 3d 283, 296-97 (S.D.N.Y. 2015) (dismissing unjust enrichment claim that was duplicative

of GBL claims); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017)

(same).  This rule has been repeatedly applied by New York's federal courts to dismiss add-on

unjust enrichment claims in cases similar to the current one.  S*ee, e.g.*, *Price v. L'Oreal USA,

Inc.*,  No.  17-civ-0614, 2017 U.S. Dist. LEXIS 165931, at *13 (S.D.N.Y. Oct. 5, 2017) ("All of the

23

claims in the Complaint are based on the same alleged misrepresentation by Defendants that the

Products contain keratin.  Accordingly, Plaintiffs' New York unjust enrichment claim is

dismissed as duplicative."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568

(S.D.N.Y. 2016) (dismissing unjust enrichment claim on the grounds that it was duplicative).

#### IV.   PLAINTIFFS HAVE NO STANDING TO SEEK INJUNCTIVE RELIEF

As past purchasers now informed of the alleged deception, Plaintffs have no standing to

seek injunctive relief.   In *Berni v. Barilla S.p.A., et al. v. Schulman*, No. 19-1921-cv, 2020 U.S.

App. LEXIS 21167 (2d Cir. July 8, 2020), the Second Circuit Court of Appeals ruled that a Rule

23(b)(2) injunction class of past purchasers in a G.B.L. § 349 deception suit cannot be certified

because the injunction would not benefit all class members, at least some of whom have learned

of the alleged deception and are not at risk of future injury.  In reaching this decision, the Second

Circuit held that "injunctive relief is not proper" as to such plaintiffs, *id*. at *14, and that such

plaintiffs lack standing to seek injunctive relief for the same reason.  *Id.* at *14 & n.36.  The

Second Circuit disapproved and effectively overruled cases such as *In re Amla Litigation.*, 282 F.

Supp. 3d 751 (S.D.N.Y. 2017) and *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL

7044866 (E.D.N.Y. July 18, 2013), where courts "have been hesitant to find that past purchasers

cannot obtain injunctive relief."  *Berni*, 2020 U.S. App. LEXIS 211 at *12-13 & n.30.

The Second Circuit's *Berni* decision applies to and controls this case, which, like *Berni*,

is a N.Y. G.B.L. § 349 action alleging consumer deception and seeking prospective injunctive

relief for past purchasers, both as individuals and as a class.  For purposes of the application of

the *Berni* rule, the particular form of the consumer deception (i.e. false labeling or slack fill) is

immaterial.  As was the case with the *Berni* plaintiffs, Plaintiffs in this case are "past purchasers

24

of a product … [who] are not likely to encounter future harm of the kind that makes injunctive relief appropriate."  *Berni* U.S. App. LEXIS 21167, at 13.

Even prior to the *Berni* decision, district courts in the Second Circuit dismissed claims for injunctive relief in false advertising cases where, as here, plaintiffs are now aware of the alleged misrepresentations that they challenge and therefore there is no danger they will again be deceived by them.  *See Alice v. Wise Foods, Inc.,* No. 17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009 (S.D.N.Y. Mar. 27, 2018) ("Consumers who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future"); *Elkind v. Revlon Consumer Prods. Corp*., No. 14-2484, 2015 U.S. Dist. LEXIS 63464, at *8 (E.D.N.Y. May 14, 2015); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc*., 148 F. Supp. 3d 285, 295-96 (S.D.N.Y. 2015) ("A plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct"); *Tomasino v. Estee Lauder Cos., Inc*., 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (denying standing because plaintiff "has made clear that she does not believe the ANR products have the effects advertised by Estee Lauder").  Accordingly, Plaintiffs' claim for injunctive relief should be dismissed.

## CONCLUSION

For the foregoing reasons, Shop-Rite respectfully requests that this Court grant its motion to dismiss Plaintiffs' First Amended Complaint.

FH5172460.2

Dated: August 24, 2020

Respectfully submitted,

*/s/ August T. Horvath*
August T. Horvath (AH 8776)
*ahorvath@foleyhoag.com*
FOLEY HOAG LLP
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel:  (646) 927-5500
Fax (646) 927-5599

*Attorneys for Defendant Shop-Rite
Supermarkets, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 24th day of August 2020, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via electronic mail.


<u>*/s/ August T. Horvath*</u>
August T. Horvath