UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SEAN TWOHIG, SANDY BALBIN, individually
and on behalf of all others similarly situated,

                       Plaintiffs,          **OPINION & ORDER**

   - against -                       No. 20-CV-763 (CS)

SHOP-RITE SUPERMARKETS, INC.,

                       Defendant.
-------------------------------------------------------------x

<u>Appearances</u>:

Spencer Sheehan
Sheehan & Associates, P.C.
Great Neck, New York

Michael R. Reese
Sue J. Nam
Reese LLP
New York, New York
*Counsel for Plaintiffs*

August T. Horvath
Foley Hoag LLP
New York, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

     Before the Court is Defendant's motion to dismiss Plaintiffs' Amended Complaint.  (Doc.

16.)  For the following reasons, Defendant's motion is GRANTED.

## I.    <u>BACKGROUND</u>

### A.    <u>Facts</u>

     For purposes of this motion, the Court accepts as true the facts, but not the conclusions,

alleged by Plaintiffs in the Amended Complaint ("AC"), (Doc. 15).

Defendant ShopRite Supermarkets, Inc. ("ShopRite") manufactures, distributes, markets, labels, and sells organic vanilla soymilk under the Wholesome Pantry™ brand ("the Product") in its retail stores and on its website.  (AC ¶ 1.)  Plaintiff Twohig purchased the Product at ShopRite stores in Poughkeepsie, New York and Fishkill, New York on multiple occasions in 2019, and Plaintiff Balbin purchased the Product at a ShopRite store in Stony Point, New York on multiple occasions in 2020.  (*Id.* ¶¶ 97-98.)  The Product sells for approximately $2.74 for a 32-ounce carton and $3.99 for a 64-ounce carton, excluding tax.  (*Id.* ¶ 77.)  The front label of the Product contains the brand name "Wholesome Pantry" at the top.  Beneath is a small banner that says "Organic."  Under the banner is the word "Soymilk," and below that word, in a different font and color and a smaller size, is the word "Vanilla."  (*Id.* ¶ 3.)  A picture included in the AC of the Product's front label is below.



(*Id.*)

Plaintiffs contend that the front label deceived them into believing that the vanilla flavoring in the Product came *only* from vanilla beans and was not enhanced by non-vanilla flavors or artificial flavors. (*Id.* ¶¶ 96, 99-101.) But, they claim, vanillin – which is the main molecule in vanilla but is derived from wood pulp or sources other than the vanilla bean, (*id.* ¶¶ 13, 18, 54) – and other compounds contribute to the vanilla flavor of the Product. (*Id.* ¶¶ 22, 23, 37.) They contend that the ingredient list, which includes "Organic Natural Flavors" and "Organic Vanilla Extract," among other ingredients, (*id.* ¶ 37), "fails to clarify any front label ambiguity" because organic vanilla extract contributes less to the Product's vanilla taste "than the front label and the ingredient list would have consumers believe," (*id.* ¶ 70).

Plaintiffs rely on a consumer survey they commissioned to support their contentions. (*Id.* ¶¶ 34-35.) According to Plaintiffs, the survey found that over forty-three percent of consumers expected the origin of the Product's vanilla taste to be "vanilla beans from the vanilla plant" and that almost fifty-five percent of consumers would be less likely to purchase the Product if the taste were due to imitation vanilla flavoring. (Doc. 15-2 at 7-8;[1] *see* AC ¶¶ 35-36.) Plaintiffs also provide the results of a Gas Chromatography-Mass Spectrometry ("GC-MS") test performed on the Product, which they allege demonstrates that "the Product contains vanillin from non-vanilla sources," among other things. (AC ¶¶ 39-51.)

Plaintiffs assert that had they known that the source of the vanilla flavor in Defendant's soymilk did not come exclusively from vanilla beans, they would not have purchased it, (*see id.* ¶¶ 76, 99, 101, 103), and that it was worth less than what they paid, (*id.* ¶¶ 75, 105, 122).

---

[1] Citations to page numbers in Doc. 15-2 refer to the page numbers generated by the Court's Electronic Filing System.

### B.    Procedural History

Plaintiffs filed the original complaint in this action on January 28, 2020.  (Doc. 1).  On June 19, 2020, the Court granted Defendant's request for a pre-motion conference concerning a proposed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 8.)  At the conference on July 9, 2020, the Court gave Plaintiffs leave to amend.  (*See* Minute Entry dated July 9, 2020.)  Plaintiffs filed the AC on July 27, 2020.  (Doc. 15.)[2]  Plaintiffs assert state-law claims for:  1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"), which prohibit deceptive business practices and false advertising; 2) fraud; 3) negligent misrepresentation; 4) breaches of express warranty and the implied warranty of merchantability, and violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; and 5) unjust enrichment.  (AC ¶¶ 118-151.)  Plaintiffs wish to represent a class of all persons residing in New York who have purchased the Product, (*id.* ¶¶ 109-117), and seek both monetary damages and injunctive relief that would require Defendant to correct its allegedly misleading labeling, (*id.* at 24-25).  Defendant moves to dismiss the AC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 16.)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

---

[2] Plaintiffs filed the original AC on July 24, 2020, (Doc. 12), and re-filed a revised version, (Doc. 15), on July 27, 2020, pursuant to stipulation, (Doc. 14).

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   DISCUSSION

### A.   New York General Business Law Claims

Plaintiffs' first cause of action arises under Sections 349 and 350 of the New York General Business Law ("GBL").  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce," and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  GBL §§ 349, 350.  To state a claim under either section, Plaintiffs must show "first, that the challenged act or practice was consumer-

oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016) (internal quotation marks omitted); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.") (internal quotation marks omitted). "[P]laintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (internal quotation marks omitted). Instead, plaintiffs must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (same). "Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is 'well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer.'" *Wynn v. Topco Associates, LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (internal citation omitted) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Plaintiffs argue in their brief that the "'VANILLA' representation on the Product caused consumers, like Plaintiffs, to believe that the Product's vanilla flavor comes predominantly, if not exclusively, from the vanilla bean." (Doc. 18 at 2.) They contend that the "ingredient list fails to tell consumers or Plaintiffs that the vanilla taste of the Product is predominantly from artificial flavors and not real vanilla from the vanilla bean." (*Id.* at 3.) These and other statements about the alleged "false message that the vanilla flavoring comes *predominantly* from

real vanilla," (*id.* at 10-11 (emphasis added); *see id.* at 8, 17), conflict with the AC, in which

Plaintiffs allege that they believed the Product was flavored "*only* by vanilla beans," (AC ¶ 101)

(emphasis added), that they purchased the Product in reliance on the representations that the

Product's flavor "contained only vanilla flavoring from vanilla beans," (*id.* ¶ 96), and that

"[c]onsumers expect the Product's vanilla taste to only come from vanilla beans," (*id.* ¶ 34).

While the AC does allege that the Product "contains less flavoring from vanilla beans than

consumers expect based on the front label and ingredient list," (*id.* ¶ 4), the word

"predominantly" does not appear in Plaintiffs' AC.  Nevertheless, I will assume for the sake of

argument that Plaintiffs made the claim in the AC that they were misled into thinking that the

Product's taste came predominantly, not exclusively, from vanilla beans.

### 1.     The Label

I accept as true Plaintiffs' allegation that Defendant's product is not predominantly or

exclusively flavored by vanilla beans.  (Doc. 18 at 3.)  Nonetheless, I find that Plaintiffs have

failed to plausibly allege that a reasonable consumer would in fact conclude that the word

"vanilla" on the Product's front label implies that the Product's flavoring was derived

exclusively or predominantly from vanilla beans, such that the front label would be misleading.

A reasonable consumer would understand that "vanilla" is merely a flavor designator, not an

ingredient claim.

Five other courts in this district have recently addressed nearly identical arguments

regarding other vanilla-flavored products.  All five courts rejected claims that the labeling of

vanilla-flavored products was misleading because the vanilla flavor did not come predominantly

or exclusively from natural vanilla.  *See Wynn*, 2021 WL 168541, at *3 (word "vanilla" is not

misleading to reasonable consumer because it does not imply that the almond milk's flavor is

derived exclusively from real vanilla); *Barreto v. Westbrae Nat., Inc.*, No. 19-CV-9677, 2021 WL 76331, at *4 (S.D.N.Y. Jan. 7, 2021) (word "vanilla" is not misleading to reasonable consumer because it does not imply that soymilk's flavor comes exclusively or predominantly from natural vanilla); *Cosgrove v. Blue Diamond Growers*, No. 19-CV-8993, 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) ("[W]ithout more, the "Vanilla" representation would be misleading only if the [vanilla almond milk] did not actually taste like vanilla."); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020) ("a reasonable consumer would not be misled by the [vanilla protein drink's label] to believe the vanilla flavor is exclusively sourced from vanilla extract"); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (vanilla ice cream's label representing that it is made with "natural vanilla flavor" did not imply to reasonable consumer that it was flavored predominantly with vanilla beans).[3]

In *Pichardo* the plaintiffs similarly alleged that "the labeling on Defendant's vanilla-flavored protein drink violates New York General Business Law §§ 349-50 . . . because the vanilla flavor is not derived exclusively from the vanilla plant." 2020 WL 6323775, at *1. The Court concluded that "reasonable consumers associate the word 'vanilla' with a flavor, not an ingredient." *Id.* at 5. I agree. As Judge Caproni explained:

> When consumers read vanilla on a product label, they understand it to mean the product has a certain taste. It is difficult to comprehend what is misleading when the Defendant's [non-dairy vanilla protein beverage] tastes like vanilla. Had Defendant's label contained other qualifying words, such as 'made with,' 'contains,' or 'vanilla beans,' a reasonable consumer might be led to believe that vanilla from vanilla extract is the exclusive or primary flavor ingredient, but that is not the case here. Nor does the use of the term vanilla imply that there are no other flavoring ingredients.

---

[3] One of Plaintiffs' lawyers here – Spencer Sheehan of Sheehan & Associates, P.C. – was one of the lawyers in each of these cases.

*Id.*  Here too, the front label of the Product does not contain qualifying words that would lead a reasonable consumer to believe that vanilla from vanilla beans is the exclusive or predominant flavor ingredient.  *See Cosgrove*, 2020 WL 7211218, at *3 ("The Court finds the Product is not misleading because a reasonable consumer would associate the representation of 'Vanilla' – with no additional language modifiers – to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient.").[4]

In *Steele* the Court analyzed the "total effect of the messages on the container" in sequence, *see* 472 F. Supp. 3d at 50 – a helpful exercise that I replicate here.  Here, the buyer's first desire is for soymilk – not vanilla.  The consumer probably wants to use it as a nondairy substitute for milk, perhaps or cereal or coffee.  The large-type "Soymilk" is obviously of immediate use because it signals that the consumer is in the right part of the store (or website).  Next the consumer must, from within the soymilk section, select the type the consumer wants from among the various choices (unflavored, vanilla, chocolate, etc.).  The word "vanilla" on the front label – which appears below the word soymilk, in a smaller size and different color – allows the consumer to quickly understand the *flavor* of the soymilk and differentiate among the available products.  "Of course [the shopper] is not looking for a [carton] of vanilla."  *Id.*

---

[4] Plaintiffs note that Defendant's Product "prominently states, 'VANILLA'" (Doc. 18 at 1), as if the prominence of the word somehow makes it more misleading.  First, the word "Vanilla" as written on Defendant's Product is not in all uppercase letters, as Plaintiffs' memorandum suggests.  Second, the word "vanilla" on Defendant's soymilk is not particularly prominent.  In three of the five aforementioned cases the word "vanilla" stood out significantly more than is the case here.  In *Steele* the word "vanilla" was the largest and most dramatic word on the container.  472 F. Supp. 3d at 49.  In *Pichardo* the product contained the words "smooth vanilla" twice, a picture of a vanilla plant, and the phrase "plant-based drink."  *Pichardo*, 2020 WL 6323775; *see* No. 20-CV-493 Doc. 22 at 2.  In *Wynn* the word "VANILLA" appeared before the word "ALMONDMILK" and was both bolded and in a different color than its surrounding words.  2021 WL 168541, at *1.

Plaintiffs cite *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), and *Sharpe v. A&W Concentrate Co.*, No. 19-CV-768, 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020), in support of their theory that a reasonable consumer might find the Product's label misleading.  But in *Mantikas*, the label of the product at issue made representations about an ingredient – whole grain – not a flavor.  *See* 910 F.3d at 635, 638-39 (Cheeze-It crackers sold in boxes that contained the words "MADE WITH WHOLE GRAIN" and "MADE WITH 8G OF WHOLE GRAIN PER SERVING" or "WHOLE GRAIN" and "MADE WITH 5G of WHOLE GRAIN PER SERVING").  It also contained the additional modifier "made with."  *Sharpe* is similarly inapposite because the product represented that it was "MADE WITH AGED VANILLA."  *See* Sharpe, 2020 WL 4931045 at *1, 5.  Here the Product's label does not contain the words "made with," and there is no mention of vanilla beans anywhere.  *See Campbell v. Whole Foods Mkt. Grp., Inc.*, No. 20-CV-1291, 2021 WL 355405, at *6 n.5 (S.D.N.Y. Feb. 2, 2021) ("The absence or presence of the words 'made with' can make a substantial difference where the relevant term is both an ingredient and a flavor.  'Made with' designates a product as an ingredient.").

Plaintiffs argue that the results of their GS-MS analysis support "the position – not that the Product lacks any vanilla – that it contains less vanilla than consumers expect."  (Doc. 18 at 13.)  But the analysis is of no use here because, as discussed, the label of the Product does not represent anything about the Product's ingredients.

The survey commissioned by Plaintiffs' counsel does not salvage their claim either.  *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) ("[T]he survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'"); *Yu v. Dr Pepper Snapple Group, Inc.*, No. 18-CV-6664, 2020 WL 5910071, at *5

(N.D. Cal. Oct. 6, 2020) ("adding surveys cannot alone salvage implausible claims" of consumer

deception).  Even construing Plaintiffs' survey in light most favorable to Plaintiffs, the survey

does not plausibly support Plaintiffs' claim.  Plaintiffs assert that the survey demonstrates that

"over 43% (a plurality) believed the origin of the vanilla taste comes from the vanilla plant,"

(Doc. 18 at 14-15; *see* AC ¶ 35), but the survey does not demonstrate that over 43% of the

respondents believed the flavor in Defendant's product came *predominantly or exclusively* from

vanilla beans – which is what Plaintiffs allege.  As explained in *Pichardo*,

> In the survey, the respondent was shown a picture of the bottle in which the product is
> sold and asked, 'What does the label . . . convey about the origin of the vanilla taste?'
> The respondent had five choices, two of which were:  'That it comes from vanilla beans
> from the vanilla plant' and 'That it comes from both the vanilla plant and non-vanilla
> sources.'  Based on the latter potential response, Plaintiffs implicitly assert that the
> respondents who selected 'It comes from vanilla beans from the vanilla plant' actually
> meant to convey that they believe the vanilla flavor comes 100% from the vanilla plant.
> That is not, however, the most plausible reading of the survey response.  Plaintiffs
> constructed the survey.  If they wanted to ascertain whether respondents thought the
> flavor came 100% from the vanilla plant, that would have been an easy enough response
> to draft.

2020 WL 6323775, at *4 n.7 (internal citations omitted).  The same is true of the survey here.

Further, in asking, "What does the label pictured above convey about the origin of the

vanilla taste?," (Doc. 15-2 at 7), the survey presumes that the label conveys something about that

origin, and it did not give participants the option of stating that they believed that the label

conveyed nothing about the origin of the vanilla taste, (*id.*).  While "[t]he role of the court at this

stage of the proceedings is not in any way to evaluate the truth as to what really happened, but

merely to determine whether the Plaintiff's factual allegations are sufficient to allow the case to

proceed," *Doe v. Columbia University*, 831 F.3d 46, 59 (2d Cir. 2016), the survey here –

designed at the behest of counsel who apparently has brought nearly 100 similar lawsuits

challenging the labeling of vanilla flavored products[5] and presumably has given significant thought to the questions – is sufficiently flawed that it does not contribute enough to render the claims plausible.  *See Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 352 (S.D.N.Y. 2008) ("A survey is not credible if it relies on leading questions which are inherently suggestive and invite guessing by those who did not get any clear message at all.").

> Finally, as in *Wynn,*
>
> Plaintiffs point to a range of federal labeling regulations as evidence of what consumers should expect different types of labels to imply about the contents of their products.  But even if Plaintiffs are correct about what the federal regulations require – a point Defendants dispute – the complaint does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations.  There is no extrinsic evidence that the perceptions of ordinary consumers align with these various labeling standards.

2021 WL 168541, at *3 (internal citations and quotation marks omitted); *see Clark v. Westbrae Nat., Inc.*, No. 20-CV-3221, 2020 WL 7043879, at *4 (N.D. Cal. Dec. 1, 2020) (Plaintiff alleged that FDA regulations "effectively establish custom and practice" that primes consumers "to infer from the Products' labeling that the Products gets its vanilla flavor from the vanilla bean," but court found this allegation to be "only a conclusion," without "any facts that plausibly support the inference Plaintiff wants the Court to draw.").

## 2.     The Ingredient List

Plaintiffs argue that the Ingredient List on the back of the Product is insufficient to correct or clarify the misleading statement on the front of the product.  (Doc. 18 at 11.)  But, as discussed, the Product's front label is not misleading.  Moreover, the ingredient list makes clear

---

[5] Debra Cassens Weiss, *Lawyer has filed nearly 100 consumer lawsuits over vanilla labeling*, ABA Journal (Dec. 23, 2020), available at https://www.abajournal.com/news/article/lawyer-has-filed-nearly-100-consumer-lawsuits-over-vanilla-labeling.

that vanilla beans are not the exclusive source of the vanilla flavor – the Product's ingredient list lists "ORANIC NATURAL FLAVORS" before "ORGANIC VANILLA EXTRACT."  (AC ¶ 37.)

Plaintiffs argue that the results of their GS-MS analysis support their claim that the "vanilla taste comes from artificial vanilla flavors like vanillin, piperonal, and maltol," (Doc. 18 at 13), but Plaintiffs do not plausibly allege that the vanillin, piperonal, and maltol detected by the GS-MS analysis were derived from artificial rather than natural sources.[6]  *See Wynn*, 2021 WL 168541, at *1 n.3 (finding plaintiffs' complaint "devoid of non-conclusory allegations that the vanillin, maltol, and piperonal used in Defendant's product are of the artificial sort"); *Barreto*, 2021 WL 76331, at *3 (plaintiff did not plausibly allege that added vanillin and maltol detected by GS-MS analysis were derived from artificial rather than natural sources). In sum,

> [i]n assessing the product's packaging as a whole, a reasonable consumer would conclude that the soymilk has a vanilla flavor and at least some of it is natural vanilla flavor.  There is no claim anywhere on the packaging that natural vanilla is the predominant source of the vanilla flavor and . . . the Complaint does not adequately allege the presence of artificial flavors.  The Complaint also does not allege the soymilk fails to have a vanilla taste or that the taste would be any different if it came exclusively from natural vanilla. Accepting as true [Plaintiffs'] allegation that natural vanilla does not predominantly provide the vanilla flavor, [they] ha[ve] failed to plausibly allege that [the Product's] label is materially deceptive or misleading to a reasonable consumer.

*Barreto*, 2021 WL 76331, at *3.

---

[6] "Maltol, piperonal, and vanillin can be either artificial or natural, depending on how they are derived."  *Wynn*, 2021 WL 168541, at *5; *see* 21 C.F.R. § 101.22 ("The term artificial flavor or artificial flavoring means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.  Artificial flavor includes the substances listed in §§ 172.515(b) and 182.60 of this chapter *except where these are derived from natural sources*.") (emphasis added).

Because the Product's labeling would not mislead a reasonable consumer, I dismiss Plaintiffs' claims under §§ 349 and 350 of the GBL.[7]

### B.   **Plaintiffs' Remaining Claims**

Plaintiffs also bring claims for fraud, negligent misrepresentation, breaches of express and implied warranty, and unjust enrichment.  These claims are all premised on the assertion that Defendant's labeling is materially misleading.  Because I have already determined that Plaintiffs have failed to allege that the Product's labeling would be likely to deceive or mislead a reasonable consumer, these causes of action are also dismissed for the reasons already stated. These claims also fail for the independent reason that they are inadequately pleaded.

### 1.   **Fraud**

To state a claim for common law fraud a plaintiff must show that:  "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance."  *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,

---

[7] To the extent Plaintiffs contend that Defendant's labeling violates regulations of the Food and Drug Administration ("FDA"), such a claim fails because the right to enforce the Food, Drug, and Cosmetic Act rests exclusively with the FDA.  *See* 21 U.S.C. § 337(a); *Steele*, 472 F. Supp. 3d at 49 ("There is no private civil right of action for breaches of [FDA] provisions").  Nor would any potential violation of FDA regulations support a GBL claim.  "[A] GBL claim is viable where the plaintiff make[s] a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under another statute that is not independently actionable, but fails where the violation of the other statute by conduct that is not inherently deceptive is claimed to constitute a deceptive practice that serves as the basis for the GBL § 349 claim."  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017) (internal quotation marks omitted).  "[W]hen the challenged acts are not inherently deceptive so as to violate GBL § 349, regardless of whether they violate another statute, such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement."  *Id.*

679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (internal quotation marks omitted).  Claims of fraud

must be pleaded "'with particularity,'" *id.* at 481 (quoting Fed. R. Civ. P. 9(b)), and thus a

plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent,

(2) identify the speaker, (3) state where and when the statements (or omissions) were made, and

(4) explain why the statements (or omissions) are fraudulent," *Eternity Glob. Master Fund Ltd. v.*

*Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks

omitted).  Rule 9(b) also requires plaintiffs to "allege facts that give rise to a strong inference of

fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal

quotation marks omitted).

Apart from the fact that Plaintiffs have not pleaded facts rendering plausible the

conclusion that the Defendant made a material false statement or omission, Plaintiffs' fraud

claim is separately dismissed because it fails to plead facts that give rise to a strong inference of

fraudulent intent.  The complaint only contains the conclusory allegation that "Defendant's

fraudulent intent is evinced by its failure to accurately identify the Product on the front label and

ingredient list, when it knew its statements were neither true nor accurate and misled

consumers."   (AC ¶ 148.)  Accordingly, the fraud claim is dismissed.  *See Campbell*, 2021 WL

355405, at *12 (dismissing fraud claim where "Plaintiff's only allegation about Defendant's

intent is that Defendant's fraudulent intent is evinced by its failure to accurately identify the

Product on the front label when it knew this was not true") (internal quotation marks omitted);

*Barreto*, 2021 WL 76331, at *8 (dismissing fraud claim in nearly identical vanilla soymilk case

because "complaint contains only conclusory allegations that Defendant's fraudulent intent is

evinced by its failure to accurately identify the Products on the front label when it knew this was

not true") (internal quotation marks omitted).

### 2.       Negligent Misrepresentation

Under New York law, to allege a negligent misrepresentation claim a Plaintiff must show

that:

> (1) the defendant had a duty, as a result of a special relationship, to give
> correct information; (2) the defendant made a false representation that he or
> she should have known was incorrect; (3) the information supplied in the
> representation was known by the defendant to be desired by the plaintiff for a
> serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the
> plaintiff reasonably relied on it to his or her detriment.

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation

marks omitted).

Defendant argues that Plaintiffs' negligent misrepresentation claim fails because no

special relationship existed between the parties.  (Doc. 17 at 21-22.)  The existence of a special

relationship between parties depends on:  "whether the person making the representation held or

appeared to hold unique or special expertise; whether a special relationship of trust or confidence

existed between the parties; and whether the speaker was aware of the use to which the

information would be put and supplied it for that purpose."  *Suez Equity Invs., L.P. v. Toronto-*

*Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (internal quotation marks omitted).

The transactions alleged are insufficient to establish a special relationship for purposes of

a negligent representation claim.  *See Sarr*, 2020 WL 729883, at *6 (no special relationship

where alleged misrepresentations were on food product's label); *Izquierdo*, 2016 WL 6459832,

at *8 ("basic commercial transaction does not give rise to a special relationship"); *Stoltz v. Fage*

*Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at * 23-25 (E.D.N.Y. Sept.

22, 2015) (no "special relationship" between manufacturer of allegedly misbranded product and

consumer); *Alley Sports Bar, LLP v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 293 (W.D.N.Y.

2014) ("special relationship" requires closer degree of trust than ordinary buyer and seller);

16

*Dallas Aerospace, Inc. v. CIS Air Corp.*, No. 00-CV-1657, 2002 WL 31453789, at *3 (S.D.N.Y.

Oct. 31, 2002) (same), *aff'd*, 352 F.3d 775 (2d Cir. 2003).   Plaintiffs argue that they have

adequately alleged that Defendant held a "unique or special expertise," (Doc. 18 at 16), but they

simply refer to one paragraph in their 151-paragraph complaint where they allege – in a

conclusory manner – that Defendant "held itself out as having special knowledge and experience

in the production, service and/or sale of the product type," (AC ¶ 131).  *See Twombly*, 550 U.S.

at 555 ("a formulaic recitation of the elements of a cause of action will not do"); *Campbell*, 2021

WL 355405, at 11 *n.9 ("This Court disregards the conclusory allegations in the complaint that

the duty is based on defendant's position as an entity which has held itself out as having special

knowledge and experience in the production, service and/or sale of the product or service type.")

(internal quotation marks omitted).

Therefore, Plaintiffs' negligent representation claim is dismissed.

### 3.    Breach of Express and Implied Warranty

Plaintiffs contend that Defendant breached both express and implied warranties.   An

express warranty is an "affirmation of fact or promise made by the seller to the buyer which

relates to the goods and becomes part of the basis of the bargain."  N.Y. U.C.C. Section 2-

313(1)(a).  Without specifying any particular language from the Product's labeling, Plaintiffs

allege that Defendant "warranted to Plaintiffs and class members that they possessed substantive,

functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other

attributes which they did not."  (AC ¶ 136.)  But Plaintiffs point to no express statements on

these subjects.  Defendant's organic vanilla soymilk "does not state it is [flavored] exclusively

with [vanilla beans] and a reasonable consumer would not interpret the representation of 'Vanilla

Soymilk' to make this claim." *Barreto*, 2021 WL 76331, at *6 (dismissing express warranty claim in nearly identical vanilla soymilk case).

A breach of the implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used," *see* U.C.C. Section 2-314(c), – in this case, unfit to drink. Plaintiffs' claim for breach of implied warranty of merchantability fails because Plaintiffs did not allege that the Product is not of merchantable quality. To the extent the Complaint alleges that the Product does not conform to any promise or affirmation of fact made on its label, Plaintiffs' claim fails for the same reason as their express warranty claim. *Barreto*, 2021 WL 76331, at *7 (noting same).[8]

### 4.      Unjust Enrichment

To state a claim for unjust enrichment under New York law a Plaintiff must show that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015). "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (internal quotation marks omitted).

---

[8] The Complaint also purportedly brings a claim under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, but neither party addresses this claim in its briefing on the motion to dismiss. Regardless, Plaintiffs' claim brought under the Magnuson Moss Warranty Act is dismissed because Plaintiffs have not adequately pleaded a cause of action for breach of written or implied warranty. *See Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.").

Courts will routinely dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim." *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (internal quotation marks omitted). Here, Plaintiff has failed to explain how the unjust enrichment claim is "not merely duplicative of [the] other causes of action." *Id.* (dismissing unjust enrichment claim because plaintiffs failed to explain how it was not merely duplicative of negligent misrepresentation, fraud, and breach of warranty claims); *see Barrreto*, 2021 WL 76331 at *8 (dismissing Plaintiff's unjust enrichment claim in nearly identical vanilla soymilk case because claim was based on plaintiff's consumer deception claims); *Alce v. Wise Foods, Inc.*, No. 17-CV-2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative of GBL §§ 349 and 350 claims); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *39 (S.D.N.Y. Nov. 12, 2015) ("Plaintiffs have failed to show how their unjust enrichment claim differs from [their] . . . tort claims[,] which seek relief from the same conduct, and therefore it must be dismissed under New York law.") (alterations in original) (internal quotation marks omitted); *Reynolds*, 136 F. Supp. 3d at 524-25 (granting motion to dismiss plaintiff's unjust enrichment claim as duplicative of § 349 and fraud claims). Therefore, Plaintiff's unjust enrichment claim is dismissed.

### C.   <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among

other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which they would move to dismiss, (Doc. 7), as well as the Court's observations during the pre-motion conference, (*see* Minute Entry dated July 9, 2020). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiffs have not asked to amend again or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this opinion.  *See TechnoMarine*

*SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.[9]  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 16), and close the case.

**SO ORDERED.**

Dated: February 11, 2021
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.

---

[9] Based on this disposition, the Court need not evaluate the parties' preemption or standing arguments.